cases to be argued. We're going to start off with 23-10718 Garland v. VanderStok. Mr. Janda, step right up. You're batting lead off today. Thank you, Your Honor, and may it please the court, Sean Janda for the federal government. Mr. Janda, good morning and welcome to New Orleans. Let's get right to it because I know we have a short amount of time. I want to make sure I understand ATF's conception of readily as it's used in the regulatory text. So I'm looking, my version is from the Federal Register, so it's 24,739, subsection C. I understand that you use the phrase readily converted and readily restored. Correct, Your Honor. The statute obviously just says readily. The GCA says readily. Correct. Converted. And I gather that we're using readily restored because it's in the NFA? So, Your Honor, I don't think that there's any substantial distinction there. Restored, I think, is a sort of subset of converted. Converted is to change from one thing to another, whether you're restoring, assembling, converting in the first instance. So that's what we were saying. Good. Yeah, that was my sense of it because it looks like there's a lot of use of NFA cases, for example. So you rely in footnote 43 on United States v. Smith in cases that involve NFA readily restore as interpreting what the ATF now means as readily convert. Am I following so far? Sorry, Your Honor. So what ATF is doing in the rule, as ATF explains, is trying to give more sort of content and notice to this longstanding practice of treating things they've reached a particular stage of manufacturing or machining as frames or receivers or as weapons. And to try and sort of build out and give that notice, ATF is pulling from sort of decades of case law interpreting, both in the GCA and the NFA context, the concept of readily. And that makes perfect sense to me. So we're going to use both bodies of case law to help people understand what it means to readily turn one thing into another. Correct. Great. So in cases like United States v. Smith, which ATF relies on, someone takes a decommissioned Thompson machine gun, pours metal down the barrel, welds the receiver and the breech together, and the 8th Circuit holds 52 years ago, that's readily restored, but I guess it doesn't matter. We could use, since the text uses both, so it's readily converted or the sophisticated understanding of metallurgy in eight hours in a metal shop could turn it into a machine gun. I'm following so far? That may be what Smith says, Your Honor. I'll be honest, I don't have an in-depth understanding of what was necessary in Smith. I think in this particular case, ATF, in trying to give content to readily, has provided eight different factors that sort of go to that question. And some of those factors are things like how much time it would take, the sort of tools you need, the expertise, the skill. And so whether under ATF's definition, that particular product would be readily restored, I don't know the answer. ATF gave us the answer. It said yes. It says see if United States v. Smith, it's in footnote 43 of the rule. It says this is well established and everyone should understand it. I feel like you've given me the answer. Now, I'm not sure if it helps you to say, well, we have an eight-factor balancing test and maybe the answer would come out differently today. It's either one or the other. It's either we think Smith is a good case, which is why we relied on it and put it in the federal register and put it in the final rule and everyone should be on notice of it, or actually we're going to backtrack from it using an eight-factor balancing test and Godspeed, America, maybe you can figure it out, maybe you can't. Again, Your Honor, I don't know what ATF would say about the particular product at issue in Smith today. I don't necessarily read the rules taking a position on that. The rule looks to this developed body of case law to think about the sorts of factors that are relevant. That being said, I think it's important in the context of this particular case to remember that this is a facial challenge to these two provisions of the rule. I don't think there's any dispute in this particular case about whether plaintiff's products are, in fact, readily converted to be functional frames and receivers or readily assembled into functional firearms. There's a lot of challenges in this case as to what the word readily means, and ATF has tried to put everybody on notice. As you pointed out, the whole purpose of this rule is to tell the world what readily means, and so you've given us both an eight-factor balancing test and some cases, and to put a fine point on this, here's what I don't understand. If eight hours of sophisticated understanding of metallurgy, a well-equipped shop, and the ability to saw off a barrel, re-tap a new barrel nut, put in a new barrel, fix the welds, and turn that into a machine gun, if that is readily, which is what ATF says in the rule, why is it that every American in the United States who has an AR-15 doesn't have a readily converted machine gun? Because as I'm sure you know, and as ATF knows, there are articles all over the internet. For pennies, people, and for minutes, people can turn AR-15s into machine guns by simply changing the sear. You can use parts that you can buy readily available on the internet. You can use coat hangers. This is all over the internet. It's very easy to do. So is an AR-15, in your view, readily, and when I say that, I mean just a semi-automatic AR-15, is it readily converted to a machine gun, yes or no? So I can't answer that question, Your Honor. It takes seconds. It takes minutes. It does not answer that question. So you can't tell me something that takes minutes. Counsel, you can't tell me if something that takes minutes and pennies to convert is readily converted? So the NFA, my memories, Your Honor, which again is not directly issued in this case, includes slightly different language with respect to... Hold on. You just told me at the outset of this argument that they're the same. There's no difference. Your word's not mine. No, Your Honor. The word readily appears in both statutes. ATF draws on the bias of case law under both statutes to define that particular word. That being said, my memory, again, the NFA is not an issue in this case. Plaintiffs haven't raised any of these sorts of arguments. Oh, they absolutely do. They say we don't know what readily means. They say it's void for vagueness. It's arbitrary and capricious. It violates the due process clause. They read page after page after page. We don't know what readily means. And you can't tell me what readily means. You won't tell me that it means eight hours of minutes and pennies. So what is it? Your Honor, again, I cannot tell you because I don't know how ATF is not an issue in this case. That being said, again, there is no particular as-applied challenge in this rule. And ATF is happy to provide guidance with respect to particular products, with respect to the sort of Polymer 80 frames, for example, where ATF issued the open letter. And I don't take plaintiffs to be, at least at this point in the case, challenging any ATF's particular determinations about either factually, how easy it is to convert many of their products to functional frames and receivers or to functional firearms, or to be challenging ATF's interpretation or understanding of readily as applied to those products. And so, again, we're happy to have, if someone disagrees with ATF's understanding, we're happy to have a fight about a particular product. But that's just not the challenge that they're bringing. In this case, the challenge they're bringing is a facial challenge to the rule. As I understand their ATF has no ability to regulate anything that is not already a fully functional frame of receiver, as we explained in the brief, or a fully assembled firearm. As we explained in the brief, that just is wholly inconsistent with the statutory text, with decades of practice, and with this court's precedent. And that's, I think, all this court needs to say. The vagueness challenge obviously wasn't ruled on by the district court. I think it would be fine for this court to rule on the two challenges that were ruled on by the district court and send it back for the district court to consider the vagueness challenge in the first instance. But again, that's, I think, just not really an issue in this particular appeal. And your position is you don't know what readily means. That's what I heard you say a minute ago. You can't tell me. I mean, ATF defines readily. There are pages of examples and explanations. ATF has issued, as I understand it, more than 40 particular classifications after the rule with respect to particular products, has issued open letters with respect to commonly available products like polymer 80 frames, like certain AR variant receiver blanks, which ATF found were not readily converted into firearms. And so again, it's a qualitative standard. It's not a standard that I can stand up here and say reduces down to any single thing. That being said, again, I mean, readily has been in both statutes for decades. I'm not aware of any case holding that readily in either statute over those decades is unconstitutionally vague or can't be applied. It's just, it might be sort of edge cases. There may be hard cases and there are different factors that have to go with that. Counsel, how would you reconcile a shift in language from the FFA to the GCA where Congress explicitly amended the statutory language to exclude any part or parts of a So the final rule, Your Honor, includes not regulation of individual parts, which is what Congress had done previously, but rather includes regulation of assemblages of parts, say in a kit, that allow an individual to readily assemble their functional firearm. Are you making a distinction between a single part as opposed to a kit that contains parts to be assembled? Correct. Because a single part, a single barrel or a single stock, it may not itself be readily converted into a functional or operational firearm. When you put all the parts together in a kit that in fact allows for that sort of ready assembly, then the assemblage of parts, the kit altogether, is itself both designed to and is readily converted into an operational firearm. And that accords, and I think with, again, decades of practice and precedent, and we cite a number of cases in our brief involving disassembled weapons where someone has sort of done the reverse and taken apart the weapon. And courts uniformly hold that those weapons constitute firearms under, often under the sentencing guidelines, but it's the same definition that we're talking about in this case. And here it's just rather than having it be put together and taken apart, it's more or less the same thing before it's Let me ask a more general question that's implicit in the one I just asked you. Why wouldn't Congress be the ones to to alter the language as opposed to an agency? Because Congress, Your Honor, doesn't need to do anything because the statutory language covers the non-functional frames and receivers and the kits and parts. I mean, Congress has, with respect to the weapon parts kits, said that a firearm is anything that can be, any weapon that can be readily converted into an operational size. And I just don't understand how you could read that language. Because I'm looking at 921A3, the definition, the GCA definition of firearm, is it the government's view that a frame or receiver itself is a weapon? So, Your Honor, the frame or receiver of the weapon is regulated as a firearm. I mean, that's... Say that again? Subsection A says a weapon is readily converted. Right. And then in subsection B says the frame or receiver. No readily converted language in B. That's correct, Your Honor. But I mean, two things. One is, as we explain in the briefs, we think that that's just the most natural way to read that language. It's the way that people talk. And in A, Congress has sort of defined a firearm by function. And so it says a weapon that will expel a projectile, a functional weapon. And so then... We're not to read anything into the fact that subsection A, which talks about weapons that are readily convertible, there's that language in subsection A, but there's no such readily convertible language in subsection B, yet we're supposed to import it because that's the most natural... No, Your Honor. I mean, Congress has not defined the terms frame or receiver. So in the definition of firearm, Congress sort of has a two halves definition. So firearm is functional firearms, those that will expel a projectile, and also non-functional firearms, those that may rarely be converted to functional or they're designed to be functional. And we think that accords, again, with sort of the natural understanding, if you have a bicycle, as we explained in our brief, whether you can ride it right now or whether it has some plastic on it that you need to take off before you can ride it, it's still a bicycle. So Congress, in providing the definition, has sort of done functional half, non-functional half. Congress hasn't done either of those halves with frame or receiver. Congress has left it to ATF to define the term in the first instance. And so we think that ATF, in defining the term, acted one, I mean, according to, as we said, the way that people just ordinarily use language, which does not import sort of a functional limitation, but also consistently with kind of the end result of Congress's two halves definition when it itself defined the term in the first half or in the first provision of 921a. Counsel, can you help me with the two examples that are on 24,739 of the Federal Register? So there are two AR-15 blanks or billets, same piece of metal. They're both been changed from as ATF calls it, the primordial state of raw metal block. And they're identical, right? They've got the cutouts, but they're not hollowed out on the inside. They're not indexed. ATF says one, not a frame or receiver, but the other one is a frame or receiver if it is sold with a jig. You with me so far? Yes. You agree with my understanding of what it says? Yes, or a template, but yes. How does the presence or absence of a jig change the piece of metal? Right? You're not regulating the jig. You're regulating the metal. And you're saying the metal has to be serialized, the blank or the billet. That's the thing that is the frame or receiver. That's the thing that's covered by the GCA. That's the thing that is regulated by ATF, not the jig. So how does the presence or absence of the jig turn a piece of identical of a frame or receiver? So to be clear, Your Honor, I don't think any challenge to ATF's understanding of how its regulatory definition applies to those two things is before this court. I'm sorry. It's in subsection C. We're here on a facial challenge to subsection C, and it's literally the example. I can read it to you if you don't have it in front of you. It's example 1 to paragraph C, example 2 to paragraph C. It's literally the thing in front of us. So, Your Honor, again, I do not think it's the thing in front of you. I don't think there's been arguments made in this court about the particular examples or the particular way that ATF has interpreted how its regulatory definition applies to specific products. Again, there's a big challenge raised in one of the briefs. I think this court could send it back. It wasn't ruled on by the district court, and it doesn't go to the key thing, I think, before this court. But taking the examples head-on, the definition of readily includes—and I don't think anyone disagrees that this is an ordinary understanding of readily—it is more likely to be readily converted if less skill and time is needed. And so if a product is sold with a jig that sort of shows you exactly where to drill, and you just put it in, and you drill the hole, that requires less skill, less precision, less expertise, and less time than taking a receiver blank without a jig where you have to figure out exactly where to drill to make the product operable. And that's all ATF is saying, is that when we're thinking about sort of the availability of or what's being sold with the product, we're just trying to think about whether someone can, in fact, readily convert the product. And it's the same thing where ATF thinks about, for example, the tools that are required and how commonly available or commonly possessed those tools are. It's the same thing. If you need to go out and get some sort of very special, very expensive tool to convert the particular piece of metal into a functional frame or receiver, then that is less likely to be readily converted. If you can do it with common tools, it is quite— All right. No, go ahead. Go ahead. One brief question. I know your time is up. If you could briefly respond. How would a remand to the agency, as opposed to a vacator, provide any relief to the parties? Is the ATF willing to do some sort of fix as a result of this litigation? I think it's hard to understand, Your Honor, exactly what that would look like without understanding what this Court thinks any deficiency in the rule would be. We haven't, at least in this Court, I think, explicitly asked for remand without vacator based on the way that the District Court resolved the case. We don't think vacator is appropriate. I'm happy to not go into that given the time, but we have not specifically asked for remand. Okay. You've still got five minutes on rebuttal. Thank you. Thank you, Your Honor. Mr. Patterson, you're up. Okay. Thank you, Your Honors. Good morning. May it please the Court, I'm Pete Patterson for Appalese. The District Court correctly held that the ATF exceeded its authority in two critical ways. First, by defining firearm to include items that are not frames or receivers, but that with additional manufacturing could become frames or receivers. And second, by defining firearms to include kits that are not weapons, but that can assist individuals in making weapons for their own use. And for that reason, the District Court correctly vacated the ATF's starting with the definition of a frame or receiver. A frame or receiver simply is something that can operate as a frame or receiver. And the ATF's mistake can be seen from the very text of the rule itself, which says that a frame or receiver includes items that can be readily converted into functional frames or receivers. And the ATF in its own brief says that to convert means to change from one state to another. So if something needs to be changed into a frame or receiver, it clearly is not itself a frame or receiver. Prior to the final rule, didn't the ATF routinely make determinations of completeness? Well, the ATF did make determinations of completeness, but the ATF's position before the final rule, this can be seen in the Syracuse litigation that we've cited, they said you cannot take the readily converted language from Part A and import that into Part B. So that was their legal position before enacting the final rule, and that's our legal position here, is that the readily converted language makes no sense to say that's part of the natural understanding, then why did Congress have to include it in Part A if that's part of the natural understanding? And we certainly did raise this issue of the same piece of metal potentially being a frame or not being a frame, depending on what is sold with it. I believe we put those pictures in our brief. Yeah, I'm completely shocked. Like, I'm looking at the DOJ's brief, and I mean, they say the district court erred in holding the rule's definition of frame and receiver with partially complete, disassembled, non-functional frames and receivers violates the GCA. They've got it right there. The district court so held it. You raised it as your first question. You've got illustrated pictures of it all in your brief, and then the Justice Department stands up in court today and says, no, none of this is in front of us. I'm confused. Yeah, I'm confused too, Your Honor. I mean, maybe what they're saying is that we're not raising an as-applied challenge as to those specific items, but we're raising a facial challenge, and that's illustrative of why this rule goes beyond the ATF's authority, because clearly it's regulating items that aren't frames or receivers if they say the same piece of metal can be regulated in certain circumstances, but not in other circumstances. So the ATF has clearly exceeded its authority in that circumstance. The same with respect to the parts kits, and what's critical to understand about the parts kits is this only has relevance to the extent the kit does not include a frame or receiver, because if the but that makes a hash of the statute, because the Gun Control Act just does not conceive of a firearm without a frame or receiver. 923I tells manufacturers on every firearm that you manufacture, you have to put a serial number on the frame or receiver. So if an item is classified, a kit, as a firearm, and there's not a frame or receiver, again, that's the only marginal difference this can make. There's nowhere to put the serial number. It just a frame or receiver. So that sinks the definition. Also, the Gun Control Act says that weapons, including starter guns, that can be readily converted to expel a projectile by the action of an explosive. So it's talking about conversion of one type of weapon into another type of weapon. It's not speaking of taking a non-weapon and providing tools that can assist individuals into making a weapon. So the parts kits are excluded for that reason. Additionally, other sections of the Gun Control Act, including the definition of destructive devices, silencers, and machine guns, expressly single out combinations of parts and say that those can be covered. And yet that's absent here. So for these reasons, we think the ATF has clearly exceeded its authority under both of these sections, and that vacatur was the proper remedy. Under Section 706 of the APA, courts are directed, Congress told them, you shall set aside agency action that exceeds authority or is otherwise unlawful. And at the time, the APA was an act that Black's Law Dictionary defined vacate. One of the definitions of vacate was to set aside. And the definitions of set aside included annul and revoke, similar terms. Very shortly thereafter, the federal courts understood this language to mean vacate. And similarly, this court's precedent establishes that the language means to vacate. And so I don't think there's any question under this court's precedent and even under the proper interpretation of the APA that vacatur is a proper remedy. The other side raises some arguments how, well, even if vacatur is a proper remedy, it shouldn't be entered in this case. But those two lack merit. First, they say, you should have considered an injunction before vacating the rule. But that gets things backwards because an injunction is only to be entered when there's no alternative remedy that would remedy the plaintiff's harm. And here, there is a statutory directive to courts that you shall set aside unlawful agency action. That's what the Supreme Court said in Monsanto. Before entering an injunction, courts must consider whether a less drastic remedy, such as vacatur, would remedy the plaintiff's harm. So they get things backwards by saying, consider an injunction first and then vacatur. The statute and equitable standards say that you do it in the opposite direction. Assuming vacatur is the proper relief to be granted, is it possible under the facts and circumstances here to limit that to only the named plaintiffs? No. I don't know that it's possible in any circumstance to have an as-applied vacatur. Vacatur, as this court said in data marketing partnership, is to formally nullify and revoke a rule. And it doesn't make sense to say a rule is formally nullified and revoked with respect to one party, but it's not formally nullified and revoked with respect to another party. So I think the mistake here is mixing concepts relating to injunctions with concepts relating to vacatur. So an injunction operates against a party. And so if a party wasn't joined, the rule would still be there. But you would tell the official, OK, don't enforce that rule against party X, Y, and Z. You can do that on a party-specific basis. But vacatur operates not against the party, but against the rule itself. And so if the rule is vacated, it's vacated. And the Supreme Court has acted consistent with this understanding in footnote 7 of the DHS versus regions of California case involving the DACA rescission where that was vacated. And the court in footnote 7 said, we don't need to consider whether these universal injunctions were proper because we're affirming the vacatur. So that indicates that vacatur is just a universally applicable remedy. And it's not a remedy. It's not that we're extending relief to other parties when it's vacated. It's that that's a side effect. The plaintiff brings the action under the APA. Congress has said the proper remedy is vacate. It's important to realize it applies not only to rulemakings, but also to agency orders after enforcement actions, adjudications. So really, the conception is as almost an appellate court sitting over the agency. And it's much more perhaps intuitive when it's a rulemaking because there, yes, OK, agency has entered an order. That order needs to be vacated in order to give the plaintiff relief. It wouldn't make sense in that context to say, well, set aside just means put on the other side of your desk and ignore it. No, to get relief, that plaintiff needs the order to be vacated. But the same reasoning applies to rulemaking. It's this court sitting essentially in review of what the agency has done. So it's not equivalent to reviewing a statute for constitutionality. The APA actually empowers courts to set aside and vacate agency action. And the district court properly did that here. I'm happy to answer additional questions your honors have, but if not, I'm happy to cede the rest of my time. I have one. Yes. Can we go back to the challenge that I think we all agree on that 478.12 subsection c is in front of us. Yes. The sentence that the carve out is sort of the back end of the regulatory text says the terms that, and this is the partially complete, disassembled, non-functional frame receiver. These terms shall not include a forging, casting, printing, extrusion, unmachined body, or similar article has not yet reached a state of manufacture where it clearly identifiable as an unfinished component of part of a weapon. I think I understand what that is supposed to mean because clearly identifiable and the 80% sort of common law that came from ATF decisional letters pre this rule in years past talked about these kinds of concepts. But this is what I'm curious about your view on the EG that follows. It says EG, unformed block of metal, liquid polymer, or other raw material. Then that harkens back to phrases used throughout the rule and they're defined by ATF to mean primordial state, which I understand from the footnote where they define primordial state to mean like literally just raw metal. Like a thing of stone before Michelangelo starts. Exactly right. So I don't understand where between primordial state and ATF bringing felony prosecutions against American citizens, where the line is, right? Because those two sentences seem to be conflict with each other. One of them says clearly identifiable, the other says primordial state. Yeah. I don't, I don't understand either, your honor. And that's why we've said this should be interpreted not to include that for avoid vagueness concerns. And we have raised a vagueness claim, but also let's tell it 2267 of the record and the rulemaking ATF says we're, we're, we are not going to set forth in the regulations of precise minimum completion percentage, maximum time period, or maximum level of expertise. It's almost like they're intentionally keeping the rule vague because they don't want people to be able to readily structure their operations in order to say, okay, we're on the right side of the line. It's almost as if it's intentionally vague so that nobody knows where the line is and then activity is chilled even beyond where it should be under a proper understanding. So yes, we also don't understand where that line is in the, and the other side has not been able to give the court one here today. I'm circling back real quick to vacater. Can you talk a bit about severability? Okay. Yeah. So our, we've defended the district court that these provisions were central to this rulemaking. You can see it in the public communications that we've cited. When the rule was promulgated, it's not clear that this rule would have been promulgated without these provisions. And if the entire rule is vacated, that it's not an injunction. So the ATF is free to go back and re-promulgate parts of the rule that it deems proper. The main thing that they point to is the definition of frame apart from these items, but the statutory definition or the regulatory definition has been in place since 1968. Split receiver firearms and striker fired firearms have been popular for decades. So it's not as this is an emergent issue that needed to do that. But all that said, that is something this court potentially could do is and say, and vacate the 478.11 relating to parts kits and then 478.12C relating to the frames of receivers. Okay. All right. Counsel, thank you very much. Yep. Thank you. Thank you, Your Honor. Um, so I'd like to start, I think just by taking a little bit of a step back because I think it's important to be clear about what we understand to actually be an issue. In this appeal. Um, so ATF in defining, uh, these terms, uh, I think there's sort of two pieces. One piece is the qualitative standard that, uh, the qualitative standard, Your Honor, that, um, Frank, for example, partially complete frames of receivers, they are readily converted to functional, um, frames of receivers, are frames of receivers. And then second is the application of that qualitative standard to particular products, both how that standard is applied, um, the sorts of ATF considers, uh, and also the outcome. And as we understand the district court, we think the district court's opinion, uh, held that the articulation of the qualitative standard was incorrect, that ATF has no authority to regulate partially complete frames of receivers. They are readily converted to frames of receivers. And that is what we understand to be the basis of the district court's decision. Not any problem with assuming ATF has that authority, uh, how ATF has either defined the term readily, um, or how ATF goes about applying that qualitative standard to particular products. Um, but there are some of those challenges lurking in the district court. Uh, Paul and Brady have, have brought some of those challenges with respect to its particular products. The district court didn't rule on them. We don't think they're properly before this court. Um, and similarly, the vagueness challenge is raised by one of the plaintiffs in their brief. It wasn't ruled on by the district court, uh, and we think it would be perfectly fine for the district court to consider that on remand. And so focusing in on what we understand to be actually issue in this case, uh, which is whether ATF has the authority to regulate partially complete frames of receivers, they're readily converted to functional, um, or for weapons parts kits, they're readily assembled into operable weapons. Uh, I just don't think plaintiffs have any response, uh, either to the plain meaning of the statutory text, which doesn't incorporate the sort of functional limitations, uh, that they are trying to read into the statute, um, or to the decades of history and precedent here. Um, as Your Honor mentioned, Judge Englehart, ATF has for decades, uh, issued classification layers. We cite layers going back to 1978 in our brief, um, where ATF has said even though this frame of receiver is not functional right now, it is sufficiently close to being functional to, um, to qualify as a frame of receiver. And that, uh, I think, uh, again, that longstanding regulatory practice, uh, which also accords in the weapons part kit context with this court's precedent and other court's precedents holding the disassembled weapons, um, which are essentially weapons parts kits sort of in reverse, uh, qualify as firearms. And I think all the court needs to do to resolve this appeal is to say the district court was wrong. ATF has authority, um, to issue one, uh, the rule saying that weapons or clarifying the weapons parts kits that are readily assembled, um, are sort of weapons that are readily converted and designed to be firearms. Uh, and two, the partially complete frames or receivers that are readily converted are themselves in an ordinary understanding of the term and consistent with decades, um, of ATF regulatory practice, uh, themselves regulated as frames or receivers. And then second, uh, turning quickly to the remedial issue, uh, number one, as we explained in our briefs, we don't think they care, um, is an appropriate remedy in this case. I mean, we're not taking issue with this court's precedent that they care is an available remedy. Uh, but as we explained, this court has never held the vacater is a compelled or an automatic remedy. Um, I think cargo is a really good example of this where the court remanded to the district court to figure out what the appropriate remedy, um, for what they are, uh, I think was a very similar, um, holding or, or challenge, uh, as the challenge here that the rule exceeded the statute or was in conflict with the statute. And here, uh, we think the district court, uh, number one should have at least considered, uh, alternative remedies, should have considered whether declaratory or injunctive relief limited, uh, to the specific plaintiffs to address their specific injuries was appropriate, should have balanced the equities in doing that, um, and shouldn't have just reflexively ordered vacater, uh, because of found a statutory violation. And then even assuming that some vacater was appropriate, again, uh, any vacater should be limited. Uh, number one, I mean, plants think barely defend the district court's severability holding, uh, that the district court, again, vacated the entire rule, uh, with no discussion of severability without, uh, explaining the thought that the provisions that held unlawful were in fact inseparably intertwined with provisions that held lawful. We explained our briefs, uh, they're just not, I mean, those provisions regulating silencers, regulating, uh, record keeping requirements, uh, regulating sort of which particular component of a firearm, uh, constitutes the frame of receiver, uh, they're not sort of challenged in this appeal, they weren't held unlawful, uh, and they don't depend on the challenge definitions, uh, to operate. And so at the least, we think the district court should, or sorry, this court, uh, needs to reverse as to the vacater of the remaining portions of the rule. And then also, again, the vacater as to the non-parties, um, again, uh, I mean, just traditional equitable and constitutional principles generally limit relief to addressing plaintiff's specific injuries. Uh, here, I don't think plaintiffs ever contend that a universal vacater is required to address their specific injuries, um, and so there's no reason that the district court could not have, and this court should not, uh, reverse as to at least the overbroad aspects of the vacater. If there are no further questions, we would ask the court to reverse. Okay. Thank you very much. Thank you to both sides this morning. Very lively, obviously. So the case is submitted.